THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN MYLES, Defendant-Appellant.

First District (2nd Division)   No. 77-1878

Opinion filed April 15, 1980.

844

G. Flint Taylor, Jr., and Jeffrey H. Haas, both of Chicago (Patricia J. Handlin, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Christopher Cronson, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

Defendant, John Myles, was charged by indictment with the offense of armed robbery in violation of section 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 18—2). After a jury trial, defendant was convicted as charged and sentenced to a prison term of 35 to 60 years. Defendant appeals. We consider the following issues: (1) whether the actions of the trial court deprived defendant of his right to the effective assistance of counsel; (2) whether the trial court erred in denying defendant's motion to quash his arrest and to suppress evidence; and (3) whether the trial court erred in denying defendant's motions for

substitution of judge and for change of venue.[1] For reasons hereinafter set forth, we reverse and remand for further proceedings not inconsistent with this opinion. Since the facts pertinent to the trial itself provide a basis for most of defendant's assertions, those facts as well as evidence regarding defendant's arrest, rather than evidence regarding defendant's crime, are set forth below.

At defendant's arraignment on July 5, 1974, Mr. James Reilley filed an appearance as defendant's attorney. While defendant was released on bond, the case was assigned to Judge Daniel J. Ryan and the cause was continued eight times before it was reassigned to Judge Robert L. Massey. On September 18, 1975, pursuant to a petition filed by the State, Judge Massey revoked defendant's bond. Defendant filed a motion for a change of venue from Cook County claiming adverse trial publicity, and the cause was continued for consideration of the motion.[2] The cause was continued on three occasions prior to reassignment on November 5, 1975, to Judge James E. Strunck, who denied a motion by defendant to vacate the prior order revoking defendant's bond. The cause was again continued on eight occasions with the State answering ready for trial beginning on December 19, 1975. On March 8, 1976, defendant filed a petition to dismiss Reilley as his attorney, alleging that Reilley was not protecting his rights. Reilley then filed a motion to withdraw. The trial court denied the motion to withdraw until such time as another attorney filed an appearance on behalf of defendant. The court permitted defendant to speak to his wife and continued the motion until the next day. On March 9, 10 and 11, 1976, defendant indicated to the court that his wife was attempting to retain an attorney for defendant. On March 17, 1976, defendant's wife advised the court that attorney E. Duke McNeil would represent defendant. In response the court advised her that McNeil should be present in court the following morning. On March 18, 1976,

---

[1] Defendant has presented several other issues for review which do not appear to be separate and distinct from the issue of whether he was deprived of effective assistance of counsel. In light of our resolution of that issue, we find no need to address defendant's other contentions, which include (1) whether defendant's removal from the courtroom during the testimony of the State's first witness deprived defendant of his right to be present at all stages of trial; (2) whether defendant was denied a fair trial when he was brought into the courtroom by eight sheriffs for purposes of identification and at the time was dressed only in his underwear; (3) whether the trial court committed reversible error by refusing to discharge the jury or to allow supplemental voir dire after a delay of 17 days between jury selection and the commencement of trial; (4) whether the trial court improperly commented on defendant's right to testify; and (5) whether the failure of the public defender to cross-examine the State's witnesses during the sentencing hearing requires reversal or remandment for resentencing.

[2] The record indicates that Reilley withdrew the motion for change of venue and that it was never ruled upon by the court. The motion was renewed by the public defender on April 14, 1976, and was denied.

defendant advised the court that although he wished to retain McNeil as his attorney, he needed time to obtain money to pay McNeil's fee. The assistant state's attorney stated that he had spoken to McNeil and that McNeil had indicated that he was not going to file an appearance on defendant's behalf. The cause was continued until March 22, 1976, so that defendant's wife could speak to McNeil.

The next court appearance noted in the record was March 29, 1976, at which time the court tendered to counsel a report from Dr. Kelleher of the Psychiatric Institute. The report concluded that defendant was fit to stand trial. Reilley requested that a private psychiatrist interview defendant and renewed his motion to withdraw, stating that defendant would not cooperate with him. Defendant stated that he did not wish to be represented by Reilley or by a public defender, and that he was incapable of representing himself. The court then noted that since March 8, 1976, defendant had requested another attorney and that two attorneys had been consulted but neither had filed an appearance. The court denied Reilley's motion to withdraw. Defendant then made an oral motion for substitution of judges, stating that it was impossible for him to receive a fair trial. The court denied the motion but advised defendant that he could file a written motion. The case was set for trial for the following day.

On March 30, 1976, defendant initially refused to enter the courtroom, and when brought out of the lockup stated that he was not ready for trial, that the court was forcing him to trial and that he had a right to counsel of his choice. Defendant stated that he did not wish to represent himself, and that he did not wish to be represented by Reilley or by a public defender. The court replied that defendant had had ample opportunity to secure counsel, that three attorneys had been contacted but none had filed an appearance and that defendant was dilatory and attempting to avoid trial. The court denied defendant's motion for an independent psychiatric examination, and the prospective jurors were called and sworn in. When Reilley was introduced as defendant's counsel, defendant stated he wanted the jury to know that Reilley was not his attorney and that he did not have an attorney. The court then questioned the jurors as to whether they had prior knowledge of defendant or of the case. None of the jurors answered affirmatively.

On March 31, 1976, the cause was continued pending disposition of a petition filed by Reilley in Federal district court to ascertain his status as defendant's attorney. On April 2, 1976, Reilley advised the court that his petition in Federal district court had been dismissed for lack of jurisdiction, and he renewed his motion to withdraw. The court again denied the motion until such time as defendant could retain another

attorney. Reilley then filed a motion to quash defendant's arrest and to suppress identification testimony and fingerprint evidence.

The following evidence was adduced at the April 5, 1976, hearing on the motion to quash defendant's arrest and suppress evidence: Police officer Gerald Corliss testified that on March 5, 1974, while investigating a robbery of a food store[3] he spoke to an eyewitness, Richard Evans. Evans stated that the store was robbed by three men, whom he described. Officer Corliss then asked Evans to look at an array of 10 to 15 police photographs. Evans viewed the photographs and when he saw defendant's picture,[4] he said, "This is the man" or "This looks like the man." However, Evans indicated that he wanted to view a lineup before he would sign a complaint. Evans also selected two other photographs from the array. Based upon this identification, Officer Corliss arrested defendant, without a warrant, on that same day. After his arrest, defendant was placed in a lineup and identified by Evans.

Police officer James Houtsma testified to substantially the same facts as Officer Corliss and further testified that three or four people viewed the lineup on the same day as Evans and on the next day, March 6, 1976, 35 to 45 persons viewed a lineup in which defendant participated. Officer Houtsma testified that an agent of the food store, not Evans, had signed the complaint.

Richard Evans testified that on March 5, 1976, he was employed as a security guard at a Jewel food store on 79th Street in Chicago which was robbed by three men. Evans gave descriptions of the three men to police and selected three photographs from an array of 10 to 15 photographs shown to him by police. When he selected defendant's photograph, he said, "This looks like one of them." Evans did not recall telling the officers that he wanted to view defendant in a lineup before he would make a positive identification. Later the same day, Evans identified defendant in a lineup. It was stipulated that Evans told Reilley that he gave a general description of defendant to police.

Chicago police officer Edmund Butz testified that he had investigated an armed robbery of a food store at 837 West 69th Street in Chicago which had occurred on January 30, 1974. This was the incident leading to the charge in the instant case. On March 6, 1974, Officer Butz was present when witnesses of the January 30 robbery viewed two lineups in which defendant participated.

---

[3] This robbery is separate from and unrelated to the offense charged in the case at bar. Defendant was arrested initially for the March 5, 1974, robbery and after arrest, he was identified in a lineup as the perpetrator of the January 30, 1974, robbery which is the subject of the instant case.

[4] Officer Corliss indicated at trial that he no longer possessed the photograph of defendant.

After arguments by counsel, the trial court found that police had probable cause to arrest defendant and denied the motion to quash the arrest and suppress evidence.

Jury selection was conducted on April 8 and 9, 1976. On April 12, 1976, Reilley advised the court that on the previous day he had received an anonymous telephone call at his home during which the caller had requested that Reilley resign from defendant's case. Reilley opined that defendant had no knowledge of the call. Reilley again moved to withdraw from the case because he felt that someone was making threats against him.

On April 14, 1976, the trial court granted Reilley's motion to withdraw and appointed the public defender to represent defendant. Defendant objected to the appointment, stating that he wished to be represented by an attorney of his own choice. Defendant further stated that he did not wish to appear *pro se*. The public defender moved for a substitution of judge, for a change of venue and for discharge of the jury, all of which were denied. The public defender thereafter made a motion to continue the case for 30 days in order to prepare for trial. The court continued the case until April 26, 1976.

On April 26, 1976, defendant answered not ready for trial. He further stated that he did not wish to be represented by the public defender and did not wish to proceed *pro se*. Defendant advised the court that he had spoken to an attorney, Mr. Howard. The public defender made a motion to withdraw, stating that defendant refused to cooperate with him. The court denied the motion, and the matter proceeded to trial. During the assistant state's attorney's opening statement, defendant interrupted, stating that he was being forced to trial and that the judge would not give him time to retain an attorney. Outside the presence of the jury, the court warned defendant that if his outbursts persisted, he would be removed from the courtroom. After the prosecutor's statement, the public defender stated that he had no opening statement but that attorney Howard was present and wanted to speak to defendant. After a recess, the judge noted that he spoke to attorney Howard in chambers and Mr. Howard would not be filing an appearance at that time. The court then instructed defendant that he could make an opening statement which had to be confined to the evidence. Defendant then stated that he was being forced to trial against his will. Outside the presence of the jury, the court again warned defendant about his conduct, to which defendant replied that he would not sit and remain quiet. The court ordered defendant to be removed from the courtroom until he agreed to behave. The public defender noted for the record that defendant was not boisterous and had not raised his voice. Trial proceeded with the testimony of the first

witness, Lawrence Rodney, without the presence of defendant.[5] After direct examination of this witness, the court recessed to permit the public defender to relate to defendant what had transpired in his absence. Defendant then returned to the courtroom to cross-examine this witness.[6] Following the testimony of several witnesses, the public defender advised the court that defendant did not want him (the public defender) to question any witness, that defendant was incapable of representing himself, and that defendant wished to retain an attorney. Despite protestations by both the public defender and defendant that defendant was incapable of representing himself and that he wished to retain an attorney, defendant did cross-examine several witnesses and attempt to elicit the testimony of two witnesses on his own behalf. The testimony of these witnesses was objected to on the grounds of hearsay.

I.

■█ █ Defendant initially contends that the actions of the trial court denied him his right to effective assistance of counsel. Specifically, defendant contends that he did not knowingly waive his right to counsel, that he was denied counsel of his own choice, and that the public defender was incompetent and did not adequately represent defendant. A defendant in a criminal trial has a constitutional right to be represented by competent counsel of his own choice. (*People v. Burson* (1957), 11 Ill. 2d 360, 143 N.E.2d 239.) The right to counsel may be waived, but such waiver must be knowingly and intelligently made by defendant. (*Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019.) In determining whether there is a valid waiver, the courts will indulge every reasonable presumption against waiver. (*People v. Hessenauer* (1970), 45 Ill. 2d 63, 68, 256 N.E.2d 791.) More than a routine inquiry is required to determine whether a defendant understands the nature and consequences of the charge against him and intelligently waives assistance of counsel. (*People v. Vanderwerff* (1978), 57 Ill. App. 3d 44, 372 N.E.2d 1014.) In Illinois the guidelines for advising a defendant of the right to counsel are encompassed in Supreme Court Rule 401(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 401(a)), which provides:

"Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense

---

[5] During this testimony, the assistant state's attorney requested that defendant be brought into the courtroom for purposes of identification. Defendant refused to come into the courtroom and removed his clothes. The court ordered the sheriffs to dress defendant and to bring him to the doorway of the courtroom. Defendant, wearing only his underwear, came to the doorway accompanied by eight sheriffs.

[6] Defendant was present for the remainder of the trial.

punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court."

The purpose of Rule 401(a) is to insure that the defendant is advised, on the record, of all pertinent facts and to preclude the defendant from waiving assistance of counsel without full knowledge and understanding. (*People v. Brown* (1980), 80 Ill. App. 3d 616, 399 N.E.2d 1374; *People v. Lindsey* (1974), 17 Ill. App. 3d 137, 140, 308 N.E.2d 111.) This court recently held in *People v. Brown* that Rule 401(a) mandates that the record affirmatively demonstrate that the defendant was given the requisite warnings, and that substantial compliance with Rule 401(a) is insufficient to safeguard defendant's constitutional right to counsel.

In the case at bar defendant repeatedly stated that he did not wish to proceed *pro se*, that he did not wish to be represented by the public defender, and that he wished to be represented by counsel of his own choosing. The trial court gave defendant ample opportunity to obtain counsel, granting several continuances and permitting defendant to speak to his family. After a three-week period (from March 8, 1976, until March 30, 1976), the court set the case for trial, stating that defendant was dilatory and attempting to avoid trial. Although defendant has a right to counsel of his own choice, such right may not be employed as a device "to indefinitely thwart the administration of justice." (*People v. Gatheright* (1973), 9 Ill. App. 3d 1058, 1062, 293 N.E.2d 734, *cert. denied* (1974), 414 U.S. 1132, 38 L. Ed. 2d 756, 94 S. Ct. 872.) Thus, the trial court was not required to delay trial indefinitely so that defendant could retain counsel of his choice.

■■ ■ Further, when the trial court granted Mr. Reilley's motion to withdraw, the court appointed a public defender to represent defendant rather than proceed to trial with defendant representing himself.[7] It was not error for the trial court to appoint the public defender until such time as the defendant could secure representation by other counsel. (*People v. Johnson* (1974), 24 Ill. App. 3d 152, 320 N.E.2d 69.) However, defendant rejected the assistance of the public defender; and the public defender, pursuant to defendant's desire, did not participate in the trial. Defendant

---

[7] Defendant had repeatedly informed the court that he was unable to represent himself, and that he wished to be represented by an attorney.

in fact proceeded to conduct his own defense by attempting to make opening and closing statements and to cross-examine witnesses. Yet the record does not affirmatively disclose that the Rule 401(a) admonishments were given to defendant; and therefore it cannot be said that defendant knowingly rejected the assistance of appointed counsel. (*People v. Brown*; *cf. People v. Hubbard* (1966), 77 Ill. App. 2d 14, 23, 222 N.E.2d 145, which held that "if a defendant knowingly rejects properly appointed counsel, he will then be required to defend himself despite protestations that he does not wish to do so.") Since the requisite warnings were not given, there was no waiver of counsel by defendant pursuant to Rule 401(a). Further, in view of the fact that defendant prevented the public defender from actively participating in the trial,[8] it must be regretfully concluded that defendant was not adequately represented by counsel. (*Brown*.) Thus, we reverse and remand for a new trial. In so ruling we note the dilemma often faced by trial courts when defendants engage in dilatory tactics such as those so amply exemplified by the instant case. However, we are compelled by virtue of established law to find that the Rule 401 admonitions should have been given.

## II.

Defendant next contends that the trial court erred in denying his motion to quash his arrest and to suppress identification evidence. Defendant argues that the tentative photographic identification of him by Richard Evans did not constitute sufficient probable cause to effectuate his arrest. Evans, a security guard, was present during the March 5, 1974, robbery of the food store where he was employed.[9] Upon viewing an array of police photographs, Evans selected a photograph of defendant, stating, "This looks like one of them." Evans also gave police a general description of defendant. Defendant was arrested for the March 5, 1974, robbery on the basis of Evans' identification, and on March 6, 1974, defendant was placed in a lineup and identified by witnesses of the January 30, 1974, robbery which is the subject of the instant prosecution.

○5, 6 A police officer has probable cause to effectuate an arrest without a warrant when the facts and circumstances within his knowledge are sufficient in themselves to warrant a reasonable and prudent person in believing that an offense had been committed and that the person arrested had committed it. (*People v. Henderson* (1974), 20 Ill. App. 3d 120, 312

---

[8] Defendant contends that the public defender was incompetent because he was not adequately prepared for trial and because he did not object to inadmissible testimony. However, the record indicates that the public defender did not participate because of defendant's own wishes. Thus, the cases cited by defendant regarding incompetency of counsel are not applicable.

[9] We again note that the March 5, 1974, robbery is unrelated to the January 30, 1974, robbery.

N.E.2d 655.) A general description of a suspect is insufficient to provide probable cause necessary to justify an arrest unless it is supported by other relevant facts known to the arresting officer. (*In re Woods* (1974), 20 Ill. App. 3d 641, 314 N.E.2d 606.) In *Henderson* the court held that the victim's photographic identification of the defendant constituted reasonable grounds to arrest the defendant without a warrant. Similarly, in the case at bar, the police officers had reasonable grounds to arrest defendant because they had knowledge that a crime had been committed and because a witness thereto had given them a general description of defendant and had made a photographic identification of defendant. Thus, the trial court did not err in denying defendant's motion to quash his arrest and to suppress evidence.

### III.

Defendant also contends that the trial court erred in denying his motions for substitution of judge and for change of venue.

■■ Section 114—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 114—5) provides in pertinent part:

> "(c) * * * any defendant may move at any time for substitution of judge for cause, supported by affidavit. Upon the filing of such motion the court shall conduct a hearing and determine the merits of the motion."

The right of substitution of judge pursuant to section 114—5(c) is not absolute. (*People v. Robinson* (1974), 18 Ill. App. 3d 804, 807, 310 N.E.2d 652.) The movant has the burden of showing prejudice on the part of the judge which disqualifies him to sit as the trial judge. (*People v. Winchell* (1977), 45 Ill. App. 3d 752, 359 N.E.2d 487.) Although a motion pursuant to section 114—5(c) must comply with the statute, the trial court must afford a defendant an opportunity to comply with the formal requirements of 114—5(c). (*People v. Harston* (1974), 23 Ill. App. 3d 279, 283, 319 N.E.2d 69.) In the case at bar defendant made an oral motion for substitution of judge on March 29, 1976, which failed to comply with section 114—5(c) because it was not in writing or supported by affidavit. After permitting defendant to present his argument, the court denied the motion, stating that it would reconsider if defendant filed a written motion supported by affidavit as required by the statute. Thus, the trial court afforded defendant an opportunity to comply with the statute.

■■ On April 14, 1976, the public defender, on behalf of defendant, filed a written motion for substitution of judge.[10] The public defender argued that the trial court, in granting Mr. Reilley's motion to withdraw as counsel, implied that the court believed that defendant had instigated the threatening telephone call to Mr. Reilley and thus the court was

---

[10] We note that the record on appeal does not include an affidavit in support of this motion.

prejudiced against defendant. After oral argument by the public defender, the trial court denied the motion. Defendant contends on appeal that he was not given a hearing on his motion. A trial court's consideration of counsel's oral argument is sufficient to satisfy the hearing requirement of section 114—5(c) when the trial court is aware of defendant's specific reasons for the seeking of a change of judge and has conducted the proceeding which prompted the request. (*People v. Winchell* (1977), 45 Ill. App. 3d 752, 359 N.E.2d 487; see also *People v. Polk* (1973), 55 Ill. 2d 327, 303 N.E.2d 137.) In such instances the trial judge is in the best position to determine the merits of the motion. (*Winchell*, at 757.) Defendant argues that there was no hearing because no evidence was heard. In *People v. Kadlec* (1974), 21 Ill. App. 3d 289, 313 N.E.2d 522, the court held that the duty imposed on the trial court by section 114—5(c) is to afford an opportunity to present evidence, not to insure that evidence is presented. In light of the foregoing, we conclude that defense counsel's oral argument was sufficient to constitute a hearing within the meaning of section 114—5(c). In so concluding, we note that at the time Mr. Reilley withdrew, he stated that defendant had no knowledge of the telephone call. There is nothing in the record to indicate that the court believed differently. Thus, the trial court did not err in denying defendant's motion for substitution of judge.

■■ Defendant also contends that the trial court erred in denying his motion for a change of venue. The record indicates that in September 1975 a motion for change of venue was filed by Mr. Reilley on defendant's behalf but that this motion was withdrawn and never ruled upon by the court. On April 14, 1976, the public defender filed a motion for change of venue. The assistant state's attorney opposed the motion stating that the jurors had no prior knowledge of defendant or his case. Based on the jurors' answers to the voir dire, the court denied the motion. An accused is entitled to a change of venue when it appears that there are reasonable grounds to believe that the prejudice actually exists and that by reason of the prejudice there is a reasonable apprehension that the accused cannot receive a fair and impartial trial. (*People v. Williams* (1968), 40 Ill. 2d 522, 240 N.E.2d 645, *cert. denied* (1969), 393 U.S. 1123, 22 L. Ed. 2d 129, 89 S. Ct. 1004.) In the case at bar none of the jurors had prior knowledge of defendant, and there were no reasonable grounds to believe that any prejudice actually existed. Thus, the trial court did not err in denying the motion for change of venue.

Based on the foregoing, we reverse and remand for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

STAMOS and HARTMAN, JJ., concur.